UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | CHAPTER 11 |
| | § | |
| **TRISTREAM EAST TEXAS, LLC,** | § | CASE NO. 16-31521 |
|    Debtor | § | |
| | § | |

**COMMITTEE'S OBJECTION TO DEBTOR'S EXPEDITED MOTION FOR
APPROVAL OF THE DEBTOR'S SEVERANCE PROGRAM**
[Relates to Dkt. No. 72]

The Official Committee of Unsecured Creditors of Tristream East Texas, LLC (the "Committee") files this Objection to Debtor's Expedited Motion for Approval of the Debtor's Severance Program (the "Motion," Dkt. No. 72), and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.  The Motion seeks authority to incur administrative expenses in connection with implementing a retention plan ("KERP") and severance plan (which the Debtor refers to collectively as a "Severance Program").[1]  Although both management and wage earners can receive payments, the golden parachutes of the CEO and CFO are over 45 times more than the lowest wage-earner bonus.  Indeed, the top four executives receive 30% of the proposed payments, and executives (as a group) receive 40% of the total.  The Program favors management and constitutes an undeniably self-interested transaction.  As a self-interested transaction (even in part), the Debtor must prove the actual fairness of the transaction.  Management decisions to approve massive payments to themselves are not entitled to "business judgment" deference.

---

[1] The Motion states that it is "to ensure the retention of the remaining employees" at para. 6.  The Motion also says it seeks approval under 11 U.S.C. §503(c)(2).

1

2. Separate and apart from whether the Debtor can justify the Program as a self-interested transaction, the Debtor cannot satisfy 503(c)(1) and 503(c)(2) as required in order to make retention or severance payments to insiders.

3. Even if the Court split the Program in half and analyzed payments to wage-earners separately from payments to management, the Debtor could not satisfy section 503(c)(3).

4. The Debtor has failed to identify which Debtor "employees" are employed by the non-debtor parent. The Debtor should not pay people who do not work for it. The non-debtor can spend its money without the supervision of this Court.

5. Finally, the Program is too vague and indefinite to authorize. The Debtor does not identify who will actually receive payments. The Debtor does not list the actual amount. Instead, the Debtor states the amounts will be determined at a later date based on management's consideration of relevant factors. The Debtor does not identify who is being retained and who is being terminated. The Bankruptcy Code sets statutory thresholds for severance payments—statutory requirements that require consideration of the actual amount and nature of the payments. It is impossible to determine whether the Program complies with the statute since Debtor has not identified the amounts to be actually paid and to whom. The Court and the creditor body should receive fair notice and sufficient detail to judge the Program.

## ARGUMENTS AND AUTHORITIES

### A Self-Interested Transaction Receives No Deference

6. The Court should consider all payments under the Program as a single, pretextual, self-interested transaction to benefit management. Although some blue-collar employees could receive payments as low as $3,250, payments to some C-level executives exceed $144,000 each.

The Program would require the Debtor to pay these executives bonuses as administrative expenses even if they fail to confirm a plan. Even if the Court accepted the Program at face value, it remains, at least for the 40% paid to management, a facially self-interested transaction.

7. Self-interested transactions "are necessarily subjected to heightened scrutiny because they are rife with the possibility of abuse." *In re Biderman Ins. U.S.A., Inc*., 203 B.R. 547, 551 (Bankr. S.D.N.Y. 1997); *see also In re Enron Corp*., 335 B.R. 22, 28 (S.D.N.Y. 2005) ("Courts have held that transactions that benefit insiders must withstand heightened scrutiny before they can be approved ... ."); *In re Papercraft Corp.*, 211 B.R. 813, 823 (W.D. Pa. 1997) ("[I]nsider transactions are subjected to rigorous scrutiny and, when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein.").

8. The Program would have the Debtor pay insider executives very large bonuses that the Debtor has no obligation to pay. Meanwhile creditors (who the Debtor is legally obligated to pay) will receive nothing. The Court should rigorously scrutinize this decision. The Debtor must prove inherent fairness and good faith. The Debtor cannot justify the Program under those standards.

9. The Debtor attempts to justify the Program by arguing that: (i) the Program is necessary to prevent sabotage; (ii) "fairness, equity, and good business judgment" weigh in favor of the Debtor's Program; and, (iii) the Debtor believes that a "group departure" is a very real possibility, and that a "group departure" would undermine the Debtor's ability to reorganize.[2] But even these (insufficient) arguments are easily rejected for the pretext they are.

---

[2] Mot. ¶¶ 24–26.

McKool 1178300v6

10. The Debtor's argument that bonuses are necessary to prevent sabotage defies logic. It presumes that employees would resort to felonious criminal acts even though paid wages—an unsubstantiated claim. Then, the Court is expected to accept that four weeks' pay would dissuade a would-be felon from acting. Finally, the wage-earning employees must suspect that the true reason for their bonus was a pretext for disproportionately larger bonuses to management insiders (who, one hopes, would not commit sabotage). When employees learn that the Program pays management 6 to 45 times what a wage-earner receives, the Program can exacerbate the very discontent the Debtor seeks to prevent.

11. The Debtor's third argument (a feared "group departure") is insufficient to justify the requested relief and contradicted by the facts. There is no evidence of an imminent "group departure" other than the Debtor's self-serving statement that it "believes such a group departure is a very real possibility."[3] Further, the Debtor's argument is undermined by the fact that terminations will begin April 30, 2016 and the Motion is set for hearing on April 28, 2016. It is unlikely that a "group departure" will occur between April 28, 2016 and April 30, 2016. Even if it did, this would not impair the Debtor's ability to reorganize.

12. The trade creditors are owed about $2.5 Million (though schedules have not been filed). The Program would spend $1.5 Million. The Plan will not pay unsecured creditors in full. All priority employee wage claims have already been paid under the first-day order. Creditors cannot trust the fiduciary judgment of a Debtor who would pay management 6-month bonuses while the unsecured trade creditors remain unpaid.

13. The Motion fails to provide sufficient justification for the self-interested transaction.

---

[3] Mot. ¶ 26.

McKool 1178300v6

### The Debtor cannot satisfy sections 503(c)(1) and 503(c)(2) and, as a result, is prohibited from making retention or severance payments to insiders.

14. In addition to the requirements necessary to justify a self-interested transaction, the Bankruptcy Code imposes additional specific requirements for retention or severance payments to insiders.

15. At least the following individuals set to receive payments under the Debtor's Program qualify as insiders: (i) Reid Smith, President and CEO; (ii) Gene Waguespack, Senior Vice President and CFO; (iii) Cesar Espino, Senior Vice President of Operations; (iv) Jon Major, Senior Vice President of Liquids Business Development; (v) Mark Allen Thomas, Senior Vice President of Commercial and Project Management; (vi) John Mort, Vice President and Controller; and, (vii) Erin Martin Larsen, Vice President, Treasurer, and Secretary.[4]

16. The Debtor cannot meet the statutory requirements for payments to insiders under the Debtor's Program.

Section 503(c)(1) Requirements

17. The Debtor acknowledges that a purpose of the Program is to induce employees to remain with the Debtor.[5] Therefore, the Program is subject to the section 503(c)(1) requirements to the extent it makes payments to insiders.[6] The Debtor's attempt to mischaracterize this as a "Severance Program" is ineffective. *See, e.g.*, *In re Residential Cap.,*

---

[4] 11 U.S.C. § 101(31)(B)(ii). Even if any of these individuals is only an officer of the Debtor's parent (Tristream Energy, LLC), they would still qualify as an insider. 11 U.S.C. § 101(2), (31)(E).

[5] Mot. ¶6 ("The Debtor's board has also determined that it will be necessary to terminate the employment of a substantial number of Debtor's employees ***and to ensure the retention of the remaining employees.***") (emphasis added); *see also* Mot. ¶ 7 ("The proposed Severance Program is intended both for Employees that will be terminated in the near future ***as well as those remaining with the Debtor***.") (emphasis added).

[6] 11 U.S.C. § 503(c)(1) (placing limits on a "transfer made to, or obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business").

5

*LLC*, 491 B.R. 73 (Bankr. S.D.N.Y. 2013); *In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006) (court rejected debtor's characterization of an incentive program, instead finding it to be a retention program subject to the section 503(c)(1) requirements).

18.  The Debtor acknowledges, as it must, that where section 503(c)(1) applies, the payment cannot be justified solely on the debtor's business judgment. *See In re Residential Capital, LLC*, 491 B.R. 73, 83 (Bankr. S.D.N.Y. 2013) (citing *In re Borders Grp., Inc.*, 453 B.R. 459, 470-71 (Bankr. S.D.N.Y. 2011). The Debtor must satisfy section 503(c)(1), which prohibits retention payments to an insider unless the following conditions have been met:

- The transfer or obligation is essential to retention of the person because the individual has a bona fide job offer from another business at the same or greater rate of compensation [§ 503(c)(1)(A)]; and

- The services provided by the person are essential to the survival of the business [§ 503(c)(1)(B)]; and

- Either of the following additional requirements are met

    o The amount of the transfer made to, or obligation incurred for the benefit of, the person is not greater than an amount equal to 10 times the amount of the mean transfer or obligation of a similar kind given to nonmanagement employees for any purpose during the calendar year in which the transfer is made or the obligation is incurred [§ 503(c)(1)(C)(i)]; or

    o If no such similar transfers were made to, or obligations were incurred for the benefit of, such nonmanagement employees during such calendar year, the amount of the transfer or obligation is not greater than an amount equal to 25 percent of the amount of any similar transfer or obligation made to or incurred for the benefit of such insider for any purpose during the calendar year before the year in which such transfer is made or obligation is incurred. [§ 503(c)(1)(C)(ii)].

The Debtor cannot meet these requirements.

19.  The Debtor has produced no evidence that these insiders have a bona fide job offer from another business at the same or greater rate of compensation. The Committee

included a request for this information among its discovery requests, and the Debtor's response was that no such documents existed.

20. The Bankruptcy Code's use of "bona fide" is significant—a mere threat by the employee to quit or retire is insufficient. *See* 4 COLLIER ON BANKRUPTCY ¶ 503.17[2] (16th ed.). In order to meet the "bona fide" offer requirement, the Debtor must put forth evidence to allow the Court to evaluate: "(1) the employee's intention to leave unless the KERP is approved; (2) whether the employee's reason for leaving is because the employee received a valid offer of employment from someone other than the debtor; and (3) whether the offer was at least as valuable or more valuable than that proposed by the KERP." *See In re Fieldstone Mortg. Co.*, 427 B.R. 357, 363-64 (Bankr. D. Md. 2010). The Debtor has not shown these insiders have a truly "bona fide" job offer at equal or greater compensation.

21. The Debtor has not met its burden to show that these insider employees are essential to the survival of the business. Once again, the choice of language is important: essential to the survival of the business is a higher burden than showing that the insider employees are valuable or beneficial to the estate. *See* 4 COLLIER ON BANKRUPTCY ¶ 503.17[2] (16th ed.) ("The debtor must show that continued employment is necessary for the business to survive, not simply show that the insider's retention is valuable or beneficial to creditors."). The Debtor has not even shown that retaining the insider employees is valuable or beneficial to the estate, let alone shown that they are essential to the very survival of the business. The Debtor makes conclusory statements about the need to retain employees, without even individually identifying the persons to be retained and explaining why each such person is necessary for the survival of the business.[7] This is insufficient.

---

[7] Mot. ¶¶ 13–15.

7

22. The Debtor fails to meet the requirements of either section 503(c)(1)(C)(i) or section 503(c)(1)(C)(ii). The Debtor fails to meet section 503(c)(1)(C)(i) because the Debtor has made no retention payments to nonmanagement employees during calendar year 2016. The Debtor fails section 503(c)(1)(C)(ii) with respect to Reid Smith, Gene Waguespack, Jon Major, John Mort, and, Erin Martin Larsen, as the Debtor made no retention payments to these individuals during calendar year 2015. The Debtor asserts that it made a 2015 retention bonus to Cesar Espino, but has provided no evidence in support.

23. The Debtor cannot satisfy the section 503(c)(1) requirements and should be prohibited from making payments to insiders under the proposed Program.

Section 503(c)(2) Requirements

24. The Motion acknowledges that the Debtor's Program involves severance payments to insiders and that such payments are subject to the section 503(c)(2) requirements.[8] The Debtor likewise acknowledges, as it must, that where section 503(c)(2) applies, the proposed transfers cannot be justified solely on its business judgment. *See In re Velo Holding, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012) (citing *In re Dana Corp.*, 351 B.R. 96, 100–01 (Bankr. S.D.N.Y. 2006).

25. Section 503(c)(2) requires that any severance payment to insiders be part of a program generally applicable to all full-time employees, and that the amount of the payment received by the insider be not greater than ten times the mean severance payment received by nonmanagement employees during the same year.

---

[8] Mot. ¶¶ 2, 20–21

26. The Motion states that the Debtor's Program satisfies the section 503(c)(2) requirements.[9] However, the severance payment amounts to nonmanagement employees are yet to be determined by management. Some terminated employees may not be willing to sign a voluntary release in order to receive a payment. There is no way of knowing, at this point, whether actual payments to insider management will ultimately be less than ten times the mean payment received by nonmanagement employees during 2016. The Debtor's request should be delayed until it can be determined whether the Program meets the section 503(c)(2) requirements. It is not realistically possible that insiders would disgorge overpayments.

### The Debtor cannot meet the requirements of section 503(c)(3) with respect to retention and severance payments to noninsiders.

27. As noted above, the Court should treat the Debtor's Program as a single, self-interested, Program. However, even if the Court chooses to segregate payments to non-insiders and not authorize management bonuses, the Debtor still fails to satisfy its burden.

28. The Debtor claims that it must only satisfy the business judgment rule in order to have the Court approve the Program as it relates to noninsiders.[10] This is incorrect. *See GT Advanced Techs. v. Harrington*, 2015 U.S. Dist. LEXIS 94743 at *17-20 (D.N.H. July 21, 2015) (holding that retention programs for noninsiders fall under section 503(c)(3)'s "facts and circumstances" test and that it is a higher standard than the business judgment rule); *see also In re Pilgrim's Pride Corp.*, 401 B.R. 229, 236 (Bankr. N.D. Tex. 2009) (holding section 503(c)(3)'s "facts and circumstances" test is a higher standard than the business judgment rule).

---

[9] Mot. ¶ 21.

[10] Mot. ¶¶ 18-19.

McKool 1178300v6

29.     Retention and severance payments to nonmanagement (as contemplated under the Debtor's Program) are outside the ordinary course of business. The Debtor makes the conclusory statement that "the proposed Severance Program is entered into in the ordinary course of the Debtor's business" but provides no evidence in support of this statement.[11] The Debtor's Employee Handbook specifically details the Debtor's employee benefit programs (including bereavement leave, jury duty leave, paid time off, etc.) and it does not include any mention of severance or retention payments to nonmanagement personnel. The Debtor seeks authority to make substantial gratuitous payments to nonmanagement employees that it is under no obligation to make. This is outside the ordinary course of business.

30.     As it is outside the ordinary course of business, incurring administrative expenses in relation to the Debtor's Program must be justified by the facts and circumstances of this case. In order to determine whether the facts and circumstances justify the Debtor's Severance Program, the Court should analyze the following factors:

- Is there a reasonable relationship between the plan proposed and the results to be obtained, i.e., will the key employee stay for as long as it takes for the debtor to reorganize or market its assets, or, in the case of a performance incentive, is the plan calculated to achieve the desired performance?

- Is the cost of the plan reasonable in the context of the debtor's assets, liabilities and earning potential?

- Is the scope of the plan fair and reasonable; does it apply to all employees; does it discriminate unfairly?

- Is the plan or proposal consistent with industry standards?

- What were the due diligence efforts of the debtor in investigating the need for a plan; analyzing which key employees need to be incentivized; what is available; what is generally applicable in a particular industry?

- Did the debtor receive independent counsel in performing due diligence and in creating and authorizing the incentive compensation?

---

[11] Mot. ¶ 22.

McKool 1178300v6

*GT Advanced Techs.*, 2015 U.S. Dist. LEXIS 94743 at *22 (citing *In re Dana Corp. (Dana II)*, 358 B.R. 567, 576-77 (Bankr. S.D.N.Y. 2006)).

31. The Motion lacks analysis of these factors, and thus lacks the necessary support for approval of the Debtor's Program. Instead, the Debtor makes the insufficient and disingenuous justifications discussed above.

### Under any standard of review, the Court should reject retention or severance payments to individuals not employed by the Debtor.

32. As this Court noted at the first-day hearings, the Debtor must be fully transparent with respect to payments to management. The Committee is still unclear as to which employees are employed by the Debtor, and which are employed by the Debtor's parent (which has not filed bankruptcy). The Committee objects to the Debtor making any retention or severance payments to individuals not employed by the Debtor.

33. There is no deference given to self-interested transactions. Under any standard (business judgment, "facts and circumstances", "entire fairness", or another), the Debtor fails to justify why it should make severance or retention payments to people who do not even work for the Debtor.

34. Finally, the Committee notes that the Debtor's parent company has severance obligations to certain individuals as a result of employment agreements between the Debtor's parent company and those individuals. To the extent those individuals would receive payments under the Debtor's Program, the payments constitute transfers of valuable post-petition money for the benefit of the Debtor's parent. The Debtor receives no benefit (or a minimal, inchoate, benefit) from the transfer. That action does not comply with the fiduciary and statutory obligations of the Debtor.

11

## CONCLUSION

35. This Debtor is shutting down and terminating employees. The trade creditors are not expected to be paid. The Debtor expects to reject gas gathering agreements with 30 year terms, which could cause massive rejection damage claims (if the contracts are susceptible to rejection). The Debtor has not yet filed schedules and statements. It has not yet attended the meeting of creditors. The Debtor has not yet proposed a plan. The Debtor has proposed to "warm idle" the factory since the first day hearings. The Motion seeks emergency relief, but the emergency is the Debtor's own creation. The calculus needed to evaluate the merits of the Program depends on the rejection of gas gathering contracts and the nature of the proposed plan's treatment of unsecured claims and the actual payment amounts.

36. The Program's purported benefit to the creditor body would be at best an indirect, inchoate, and hypothetical benefit. The Court should deny the Motion, and grant the Committee such other and further relief as the Court deems just and proper.

Dated: April 26, 2016

Respectfully submitted,

**MCKOOL SMITH P.C.**

By: */s/ Hugh M. Ray, III*
    Hugh M. Ray, III
    State Bar No. 24004246
    Christopher D. Johnson
    State Bar No. 24012913
    Benjamin W. Hugon
    State Bar No. 24078702
    600 Travis, Suite 7000
    Houston, Texas 77002
    Telephone: (713) 485-7300
    Facsimile: (713) 485-7344

*Proposed Counsel for the Official Committee of Unsecured Creditors*

McKool 1178300v6

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on April 26, 2016, a true and correct copy of this document was served by electronic means as listed on the Court's ECF noticing system and upon the Debtor's Master Service List, postage prepaid.

> */s/ Hugh M. Ray, III*
> Hugh M. Ray, III

McKool 1178300v6

1

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| **In re:** | § | **CHAPTER 11** |
| | § | |
| **TRISTREAM EAST TEXAS, LLC,** | § | **CASE NO. 16-31521** |
| **Debtor** | § | |
| | § | |

## ORDER DENYING DEBTOR'S EXPEDITED MOTION FOR APPROVAL OF THE DEBTOR'S SEVERANCE PROGRAM
**[Relates to Dkt. No. 72]**

The Debtor's Motion for Approval of the Debtor's Severance Program (Dkt. No. 72) is DENIED.

SIGNED: _____, 2016.

_____
DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

1

McKool 1180236v1

# TRISTREAM MASTER SERVICE LIST

| | | |
|---|---|---|
| Mark A. Serice<br>Amegy Bank<br>4400 Post Oak Parkway<br>Houston, TX 77027 | Hector Duran<br>Office of the U.S. Trustee<br>515 Rusk Suite 3516<br>Houston, TX 77002 | Frank Wright<br>*Debtor's Counsel*<br>Coats Rose, PC<br>14755 Preston Road Suite 600<br>Dallas, TX 75254 |
| Tristream East Texas, LLC<br>c/o Gene Waguespack<br>10370 Richmond Suite 400<br>Houston, TX 77042 | Texas Comptroller Public Accts<br>P O Box 135280<br>Austin, TX 78711-3528 | Internal Revenue Service<br>P O Box 7346<br>Philadelphia, PA 19101-7346 |
| Attorney General of Texas<br>Taxation Division—Bankruptcy<br>P O Box 12548<br>Austin, TX 78711 | Eagle Rock Acquisition P'ship<br>Attn: Trish Foreman<br>P O Box 2968<br>Houston, TX 77252-2968 | Thermo Control, Inc.<br>Attn: Edgar Franco<br>P O Box 1102<br>Mount Pleasant, TX 75456-1102 |
| EMS USA, Inc.<br>Dept 9296<br>Attn: Chris Hoffman<br>P O Box 4346<br>Houston, TX 77210 | Hy-Tech Insulation, Inc.<br>Attn: Keith Freeman<br>P O Box 2084<br>Kilgore, TX 75663 | Targa Resources Partners LP<br>Attn: AR Dept<br>110 West 7th Street Ste 2300<br>Tulsa, OK 74119 |
| Utility Rebate Consultants, Inc.<br>Attn: Dan Mailath<br>2526 East 71st Street Ste E<br>Tulsa, OK 74136-5531 | Sabre Operating, Inc.<br>Attn: Denise Field<br>P O Box 48484<br>Wichita Falls, TX 76308-0848 | In2Tex3 LP<br>Attn: Jason Bradley<br>4908 Costa De Oro Ct<br>Arlington, TX 76017 |
| Louisiana Valve Source, Inc.<br>Attn: Thomas Davidson<br>P O Box 932276<br>Atlanta, GA 31193-2276 | Noblett Electric Motor Service<br>Attn: Mark Noblett<br>P O Box 3097<br>Corsicana, TX 75110 | NALCO Champion<br>Attn: Benjamin Roberson<br>P O Box 730005<br>Dallas, TX 75373-0005 |
| Western Marketing, Inc.<br>Attn: Jess Martin<br>P O Box 677422<br>Dallas, TX 75267 | Basic Energy Services, LP<br>Attn: Johnny Gage<br>P O Box 841903<br>Dallas, TX 75284 | Nordon Corporation<br>Attn: Norman Franco<br>P O Box 1415<br>Round Rock, TX 78680 |
| SAMCO Enterprises, Inc.<br>Attn: Jeremy Baggett<br>3326 FM 2767<br>Tyler, TX 75708 | Johnny Ray Clements<br>185 Cedar Oaks Drive<br>Mabank, TX 75156 | DPC Industries, Inc.<br>Attn: Jimmy Tidwell<br>P O Box 301023<br>Dallas, TX 75303-1023 |
| John Crane Inc.<br>Attn: Garry Collier<br>24929 Network Place<br>Chicago, IL 60673-1249 | Diversified Projects, Inc.<br>Attn: Bob Coley<br>25000 Pitkin Road Ste 270<br>Spring, TX 77386 | Univar USA Inc.<br>Attn: AR Dept<br>P O Box 849027<br>Dallas, TX 75284-9027 |
| Baker & Associates<br>Attn: Patrick Gilpin, Jr.<br>5151 Katy Freeway Ste 200<br>Houston, TX 77007 | Hy-Tech Insulation, Inc.<br>Attn: Tammy Fletcher<br>P O Box 2084<br>Kilgore, TX 75663 | Owen Mark Sonik<br>*Counsel for Alief ISD*<br>Perdue Brandon Fielder, et al.<br>1235 North Loop West Ste 600<br>Houston, TX 77008 |

| | | |
|---|---|---|
| Tye Hancock*Ayo Shittu<br>*Counsel for Amegy Bank*<br>Thompson & Knight LLP<br>333 Clay Street Ste 3300<br>Houston, TX 77002 | Patricia Williams Prewitt<br>*Counsel for Targa SouthTex*<br>*Midstream Company*<br>10953 Vista Lake Court<br>Navasota, TX 77868 | Carl Dore Jr.*Kim Lewinski*<br>Zachary McKay<br>*Counsel for Basic Energy Services*<br>17171 Park Row Suite 160<br>Houston, TX 77084 |
| Sarah Borders<br>*Counsel for Haddington Energy*<br>King & Spalding LLP<br>1180 Peachtree Street NE<br>Atlanta, GA 30309-3521 | Mark Wege<br>*Counsel for Haddington Energy*<br>King & Spalding LLP<br>1100 Louisiana Suite 4000<br>Houston, TX 77002 | Elizabeth Weller<br>*Counsel for Various Counties*<br>Linebarger Googan Blair, et al.<br>2777 N Stemmons Frwy #1000<br>Dallas, TX 75207 |
| Tara Grundemeier<br>*Counsel for Harris County*<br>Linebarger Googan Blair, et al.<br>P O Box 3064<br>Houston, TX 77253 | Robert Shearer<br>Thompson & Knight LLP<br>333 Clay Street Ste 3300<br>Houston, TX 77002 | |