IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re § | | Case No. 16-31521 |
| § | | |
| TRISTREAM EAST TEXAS, LLC, § | | Chapter 11 |
| § | | |
| Debtor. § | | Judge David R. Jones |

**MOTION OF HADDINGTON ENERGY PARTNERS IV LP FOR RELIEF
FROM THE AUTOMATIC STAY PURSUANT TO BANKRUPTCY CODE SECTION 362**

**NOTICE UNDER COMPLEX CASE ORDER**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 6, 2016 AT 1:00 P.M. IN COURTROOM 400, 4th FLOOR, UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, 515 RUSK STREET, HOUSTON, TEXAS 77002.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING.  UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE-DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING.  YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAD THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Haddington Energy Partners IV LP ("Haddington") files this *Motion of Haddington Energy Partners IV LP for Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362* (the "Motion") and respectfully represents as follows:

**PRELIMINARY STATEMENT**[1]

1.      Over the approximately five months of the Debtor's chapter 11 case, the Debtor has lost over four million dollars while generating less than one-half million in revenue.  Additionally,

---

[1] Capitalized terms used in the Preliminary Statement have the meaning ascribed to them later in the Motion.

29332790.v3

-2-

the Debtor has idled its two main revenue-generating facilities. As a result, the value of the Collateral has dropped and left its secured lender further impaired. Notwithstanding the idling of the Debtor's Plants, administrative expenses continue to accrue, leaving the DIP Facility as the Debtor's only source of cash. Given these realities, it has become apparent that the Debtor has no reasonable prospect for an exit from chapter 11 and that Haddington should be relieved from the burden of funding a case with no realistic expectation of success and be granted relief from the automatic stay to permit it to foreclose.

2.    The economic reality is that the Debtor has no equity in the Collateral and does not have the financial wherewithal to propose and confirm a plan of reorganization that can satisfy the requirements of Bankruptcy Code section 1129 and that can withstand objections from creditors. In addition to Haddington being undersecured, the Debtor has idled the Plants and cannot expect to generate positive cash flow from the Collateral for the foreseeable future. As a result, there is not enough value in the properties to provide any distribution to the Debtor's unsecured creditors. Indeed, without the ability to generate *any* cash, much less positive cash flow, from the Collateral, it is abundantly clear that the Debtor cannot propose any plan that would cover its debt service to Haddington or any reasonable payment to Haddington that would realistically be required under a plan. The Debtor is simply under water with respect to the Collateral and has no viable options to restructure.

3.    Haddington seeks relief from the automatic stay under both subsections of Bankruptcy Code section 362(d). The Debtor has no equity in the Collateral. Further, the Debtor cannot demonstrate that it will be able to successfully reorganize within a reasonable time, or that the Collateral will be necessary to any proposed reorganization. Independently, cause exists to grant Haddington relief from the automatic stay because Haddington is not adequately protected

and because continuation of the Debtor's case amounts to prosecuting this chapter 11 case in bad faith.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this case and this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. § 1408.

5. The predicate for the relief requested herein is section 362 of title 11 of the United States Code (the "Bankruptcy Code").

**BACKGROUND**

A. **General Background**

6. On March 30, 2016 (the "Petition Date"), Tristream East Texas, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas (the "Court"). The Debtor has continued in possession of its properties and has continued to operate and manage its business as a debtor-in-possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No request has been made for the appointment of a trustee or examiner.

7. On April 13, 2016, the United States Trustee for Region 7 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Committee") in the Debtor's chapter 11 case. Docket No. 59.[2]

B. **Specific Background**

8. On the Petition Date, the Debtor filed its *Emergency Motion for Interim and Final Orders (1) Authorizing Use of Cash Collateral and Granting Adequate Protection, (2) Authorizing*

---

[2] The members of the Committee are Thermo Control, Inc., Hy-Tech Insulation, Inc., and Utility Rebate Consultants, Inc.

*Postpetition Financing, and (3) Granting Related Relief* [Docket No. 12] (the "DIP Motion"). By the DIP Motion, the Debtor sought, among other things, approval of debtor-in-possession financing through a revolving credit facility for up to $8,000,000.00 (the "DIP Facility") pursuant to the terms of that certain Debtor-in-Possession Credit Agreement, dated as of April 11, 2016 (the "DIP Credit Agreement"), by and among the Debtor as borrower and Haddington, as lender. A form of the DIP Credit Agreement was attached as Exhibit C to the DIP Motion. The Court approved the relief requested in the DIP Motion on an interim basis on April 7, 2016 [Docket No. 37]. On May 16, 2016, the Court entered its *Final Order (I) Authorizing Debtor to Obtain Postpetition Financing Pursuant to Section 364 of the Bankruptcy Code, (II) Authorizing the Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, (III) Granting Adequate Protection to the Prepetition First Lien Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, (IV) Granting Liens and Superpriority Claims, and (V) Modifying the Automatic Stay* [Docket No. 105] (the "Final DIP Order").

9. Pursuant to the Final DIP Order, the Debtor made certain stipulations with respect to the Prepetition First Liens[3] on substantially all of the Debtor's assets (the "Prepetition First Lien Collateral") the Debtor granted to the Prepetition First Lien Secured Parties under the Prepetition First Lien Loan Documents. Specifically, the Debtor stipulated that it was indebted to the Prepetition First Lien Secured Parties in an aggregate principal amount of at least $18,600,000.00 plus interest and certain fees and expenses. In addition, the Debtor stipulated, among other things, that the Prepetition First Liens were legal, valid, binding, enforceable, and perfected. The Final DIP Order also noted that on or about April 14, 2016, ZB, N.A., d/b/a/ Amegy Bank, successor by merger to Amegy Bank National Association ("Amegy") assigned all of its rights and obligations

---

[3] Capitalized terms used in the Motion not otherwise defined have the meaning ascribed to them in the Final DIP Order.

-4-

29332790.v3

under the First Lien Documents to Haddington. Prior to the assignment to Haddington, Amegy served as administrative agent under the Prepetition First Lien Credit Agreement.

10. Pursuant to the Final DIP Order, Haddington was granted perfected first priority liens on all unencumbered DIP Collateral and perfected liens upon all DIP Collateral that are junior only to the Prepetition First Liens, First Lien Adequate Protection Liens, and the Carve-Out. Furthermore, all DIP Obligations are allowed superpriority administrative claims pursuant to Bankruptcy Code section 364(c)(1) and, subject to the Carve-Out, have priority over all administrative expense claims, adequate protection and other diminution claims, priority and other unsecured claims, and all other claims against the Debtor except as provided otherwise in the Final DIP Order. As of the date of the Motion, Haddington has funded the Debtor with approximately $3,100,000.00 under the DIP Facility.

11. Haddington is the holder of the not less than $18,600,000[4] in first lien secured claims against the Debtor and $3,100,000 in secured claims under the DIP Facility, and those claims are secured by the Prepetition First Lien Collateral and the DIP Collateral (together, the "Collateral").

12. Since the Petition Date, the Debtor's revenues total only $317,376.30, with $314,878.85 of that amount generated in April 2016. *See Debtor-In-Possession Monthly Operating Report for Filing Period July, 2016* [Docket No. 156] (the "July MOR"). The July MOR shows that the remaining $2,497.45 of revenue generated by the Debtor accrued in June 2016, and the Debtor did not generate any revenue in May 2016 or July 2016. *Id.* As such, as of the date of this Motion, the Debtor has failed to generate any substantial revenue in approximately the past four months. Indeed, the July MOR shows that the Debtor has operating losses of

---

[4] The July MOR (defined below) shows pre-petition secured debt totaling $19,096,950.73 as of July 31, 2016.

-5-

29332790.v3

approximately $1 million per month and has lost a total of $4,337,512.09 since the Petition Date.

13. Further exacerbating the Debtor's revenue-generation issues, the Debtor has placed its gas processing and treatment facility in Eustace, Henderson County, Texas and its condensate stabilization and treatment facility in Myrtle Springs, Van Zandt County, Texas (together, the "Plants") into a "warm idling" mode. *See Debtor's Motion for Entry of an Order Authorizing Debtor to Reject Certain Executory Contracts* [Docket No. 118] (the "Rejection Motion"). In the Rejection Motion, the Debtor also indicated that the Plants will remain in the "warm idling" mode "unless and until economic conditions merit a return to fully operational mode." Rejection Motion at ¶ 6.

14. As a result of the Debtor's inability to generate revenue or formulate a business plan in the current gas pricing environment, the Debtor, unsurprisingly, has been unable to make any meaningful progress on a plan to exit chapter 11 despite almost five months elapsing from the Petition Date. During that time, the Debtor's estate has accrued millions of dollars in administrative expenses, which continue to accrue on a daily basis, and the Debtor's main revenue-generating assets have been idled, lost substantial value, and has left Haddington undersecured. Given the (1) Debtor's insufficient cash flow to sustain a reorganization; (2) the substantial administrative expenses that continue to accrue daily; (3) the lack of progress toward a consensual plan of reorganization; and (4) the Debtor's lack of equity in any of the Collateral, Haddington requests that the Court grant relief from the automatic stay to permit it to foreclose on the Collateral.

**RELIEF REQUESTED**

15. By this Motion, Haddington seeks entry of an order, substantially in the form annexed hereto as **Exhibit A** (the "Order"), granting Haddington relief from the automatic stay pursuant to Bankruptcy Code section 362 to (a) permit Haddington to exercise its rights to

-6-

29332790.v3

foreclose and take possession, title and ownership of all of the Collateral, and (b) require the Debtor to execute any documents necessary or appropriate to effectuate the transfer of the Collateral to Haddington.

## BASIS FOR RELIEF REQUESTED

16. The Bankruptcy Code mandates relief from the automatic stay for "cause" or when the debtor has no equity in the property and such property is not necessary for an effective reorganization. 11 U.S.C. § 362(d). Bankruptcy Code section 362(d) provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court **shall** grant relief from the [automatic] stay . . .
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; and
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if —
>
> > (A) the debtor does not have an equity in such property; and
> >
> > (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d) (emphasis added).

### A. Haddington Is Entitled to Relief from the Automatic Stay for "Cause"

17. "Cause" is not defined in Bankruptcy Code section 362 or elsewhere in the Bankruptcy Code. Accordingly, what constitutes "cause" must be determined by weighing the totality of the circumstances presented by each case. *In re Reitnauer*, 152 F.3d 341, 343 n.4 (5th Cir. 1998); *see In re Chesnut*, 422 F.3d 298, 303 (5th Cir. 2005) ("This provision gives bankruptcy courts flexibility to address specific exigencies on a case-by-case basis."). Haddington is entitled to relief from the automatic stay for "cause" because its interests in the Collateral are not adequately protected.

18. Bankruptcy Code section 362(d)(1) makes clear that a lack of adequate protection

29332790.v3

constitutes "cause" to lift the automatic stay. Haddington's interests in the Collateral are not adequately protected. First, the Plants, which constitute a substantial portion of the value of the Collateral, have been placed into a "warm idling" mode by the Debtor and are not currently generating any revenue or cash flow for the Debtor. Notwithstanding the "warm idling" of the Plants, the Plants have a limited useful life as a natural consequence of their processing of hazardous chemicals. By essentially ceasing operations, the Debtor now has no ability to generate revenue or cash flow. As a result, the only way for the Debtor to maintain the Plants and other Collateral is to use proceeds from the DIP Facility. As a consequence of the "warm idling" of the Plants and weak commodities prices, the Debtor's secured obligations under the Prepetition First Lien Loan Documents and DIP Credit Agreement exceed the value of the Collateral.

19. The issues presented by Debtor's lack of revenue generation are compounded by the fact that the Debtor has not identified a plan for exiting chapter 11 or a timeframe for bringing the Plants out of their "warm idling" state and returning them to operation. Given the extended downturn in natural gas prices since its last peak in February 2014, there is no evidence that natural gas prices will substantially increase anytime soon. Notwithstanding these issues, the values of the Plants continue to depreciate—and their useful lives continue to decrease—on a daily basis.

20. As noted above, the Debtor has not generated any substantial revenue since April 2016. As such, the Debtor has no prospect of being able to make any interest payments, much less principal repayments, on amounts owed to Haddington under the Prepetition First Lien Loan Documents and the DIP Credit Agreement.

21. Given that (1) the DIP Facility is the Debtor's only source of funds to preserve the Collateral; (2) the Plants are in imminent risk of declining in value without the DIP Facility; (3) the Debtor has not generated any substantial revenue in almost 120 days; and (4) the Debtor has no

prospect of generating revenue for the foreseeable future, Haddington is not adequately protected and should be permitted to foreclose on the Collateral.

      **B.    The Automatic Stay Should be Lifted Because the Debtor has no Equity in the Collateral and the Collateral is not Necessary to an Effective Reorganization**

22.    In addition to lifting the automatic stay for "cause," Haddington is also entitled to relief from the automatic stay because the Debtor has no equity in the Collateral and the Collateral is not necessary to an effective reorganization that is reasonably likely to occur within a reasonable time.

      (i)    <u>The Debtor Has No Equity in the Collateral</u>

23.    The Debtor has no equity in the Collateral. For purposes of Bankruptcy Code section 362(d)(2), "[e]quity is the value, above all secured claims against the property, that can be realized from the sale of the property for the benefit of the unsecured creditors." *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 392 (6th Cir. 1986). Given that (1) the Plants have been idled, (2) the Plans are not generating any revenue, and (3) the current prices for oil and gas commodities (and their extended downturn), there is no doubt that a sale of the Collateral would realize proceeds far less than the full amount of Haddington's claims.

24.    The total amount of Haddington's secured claims is not less than $21.7 million plus accrued interest and fees owed pursuant to the Prepetition First Lien Loan Documents and DIP Credit Agreement. Further, the Debtor stipulated to the validity of the Prepetition First Liens in the Final DIP Order, and the Final DIP Order granted Haddington valid and perfected first priority liens on substantially all of the Debtor's unencumbered property and valid and perfected liens on the Collateral that are junior only to the Prepetition First Liens, First Lien Adequate Protection Liens, and the Carve-Out. Moreover, pursuant to the Final DIP Order, all DIP Obligations are allowed superpriority administrative claims pursuant to Bankruptcy Code section 364(c)(1) and,

subject to the Carve-Out, have priority over all administrative expense claims, adequate protection and other diminution claims, priority and other unsecured claims, and all other claims against the Debtor except as provided otherwise in the Final DIP Order.

25. Given the value of the Collateral and the amount of Haddington's secured claims, the Debtor has no equity in the Collateral. Haddington is undersecured, leaving no equity for the Debtor or value to be paid to unsecured creditors. Accordingly, Haddington has established that the Debtor has no equity in the Collateral. *See* 11 U.S.C. § 362(g)(1); *Canal Place Ltd. P'ship, v. Aetna Life Ins. Co.* (*In re Canal Place Ltd. P'ship*), 921 F.2d 569, 576 (5th Cir. 1991).

    (ii) <u>The Debtor Cannot Establish that the Collateral is Necessary to an Effective Reorganization that will Occur Within a Reasonable Time</u>

26. Considering the Debtor's lack of equity in the Collateral, the Debtor must establish that the Collateral is necessary for an "effective" reorganization to retain the protection of the automatic stay. *See* 11 U.S.C. § 362(g); *In re Canal Place Ltd. P'ship*, 921 F.2d at 576. Under the facts of this case, the Debtor cannot satisfy that burden.

27. The "effective" reorganization standard requires the Debtor to show that there is a reasonable likelihood that it will confirm a plan within a reasonable time and that the Collateral is necessary to that reorganization. *See In re Canal Place Ltd. P'ship*, 921 F.2d at 576-77. As the Supreme Court has stated:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be a '*reasonable possibility of a successful reorganization within a reasonable time.*'

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) (emphasis added). To meet this burden, the Debtor must "do more than manifest unsubstantiated hopes for a successful reorganization," *In re Canal Place Ltd. P'ship*, 921 F.2d at

577, and the Court must "evaluate the reorganization profile of the debtor in order to determine whether there [is] a reasonable prospect" for successfully confirming a plan of reorganization within a reasonable time. *See id.* at 571.

28.     The Supreme Court also noted that relief from the automatic stay is appropriate when it appears that there is no realistic prospect of an effective reorganization, even when that reality becomes clear early in a chapter 11 case. *See Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. at 375 (citing cases where relief from stay was granted shortly after a bankruptcy filing).

29.     The purpose of this standard is to protect the rights of creditors, like Haddington, who are harmed by the continuance of a chapter 11 case that has no realistic options for success:

> When there is no reasonable likelihood that the statutory objective of reorganization can be realized or when the debtor unreasonably delays, then the automatic stay and other statutory provisions designed to accomplish the reorganization objective become destructive of the legitimate rights and interest of creditors, the intended beneficiaries. In that situation it is incumbent upon the bankruptcy judge to effectuate the provisions of the Bankruptcy Code for the protection of the creditors . . . .

*Timbers of Inwood Forest Assocs.*, *Ltd.*, 484 U.S. at 373.

30.     The Debtor cannot demonstrate a likelihood that it will be able reorganize at all, much less within a reasonable time. Among other things, the Debtor will be unable to confirm a plan because it cannot overcome the fair and equitable treatment requirements for secured claims (including the potential applicability of the Bankruptcy Code section 1111(b) election) or the feasibility requirement.

31.     The Debtor will not be able to satisfy the "fair and equitable treatment" test with respect to Haddington's claim. *See* 11 U.S.C. § 1129(b)(2)(A). Under the most common situation, that test will permit Haddington to retain its liens and will require the Debtor to provide a stream of payments to Haddington with a present value equal to the value of the Collateral and in a total

-11-

aggregate amount equal to the amount of Haddington's secured claim. *See* 11 U.S.C. 1129(b)(2)(A)(i).[5] If Haddington, however, were to make the election under Bankruptcy Code section 1111(b), the aggregate amount of payments must equal not less than $21.7 million.[6] Given the size of Haddington's secured claims, under this scenario, the Debtor would be required to provide Haddington with substantial monthly payments, and the case law will require an interest rate that takes into account the appropriate "risk premium" for this Debtor. Given the Debtor's inability to generate any revenue and the fact that it will be unable to generate any revenue for the foreseeable future, it likely will be impossible for the Debtor to propose a plan that complies with the fair and equitable requirements discussed above.

32. As set forth above, the Debtor's inability to generate revenue also means that any plan proposed by the Debtor would fail the feasibility requirement of Bankruptcy Code Section 1129(a)(11). Simply put, it is inconceivable how confirmation of any plan proposed by the Debtor would not be immediately followed by its liquidation. As such, Haddington would foreclose on the Collateral as soon as permitted under the Prepetition First Lien Loan Documents and DIP Credit Agreement. Not granting the relief requested in the Motion would only delay the inevitable, increase the Debtor's administrative expenses, and further diminish the value of the Collateral.

33. In sum, the Debtor cannot establish that it is likely to successfully reorganize within a reasonable time. The economics of this case make it impossible for the Debtor to satisfy the confirmation requirements discussed above and set forth Bankruptcy Code section 1129. Accordingly, and because the Debtor has no equity in the Collateral, relief from the automatic stay is required pursuant to Bankruptcy Code section 362(d)(2).

---

[5] Alternately, the Debtor could sell the Collateral and provide Haddington with a lien on the proceeds or provide Haddington with the indubitable equivalent of its claims. *See* 11 U.S.C. §1129(b)(2)(A)(ii) & (iii).

[6] Nothing herein shall constitute an election under Bankruptcy Code section 1111(b) and Haddington shall not be prejudiced from making, or electing not to make, such an election.

29332790.v3

-13-

## CONCLUSION

WHEREFORE, Haddington respectfully requests that the Court enter the proposed Order, attached hereto as Exhibit A, granting Haddington relief from the automatic stay pursuant to Bankruptcy Code section 362 to (a) permit Haddington to exercise its rights to foreclose and take possession, title and ownership of all of the Collateral, and (b) require the Debtor to execute any documents necessary or appropriate to effectuate the transfer of the Collateral to Haddington, all as set forth herein and grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Date:   September 8, 2016
        Houston, Texas

KING & SPALDING LLP

  /s/ Sarah R. Borders
Sarah R. Borders, Esq. (admitted *pro hac vice*)
1180 Peachtree Street, NE
Atlanta, Georgia 30309
Telephone:  404-467-7550
Email: SBorders@kslaw.com

-and-

Jason S. Sharp (Texas Bar No. 24079897)
1100 Louisiana Street, Suite 4000
Houston, Texas 77002
Telephone:  713-751-3200
Facsimile:  713-751-3290
Email: JSharp@kslaw.com

*Counsel for Haddington Energy Partners IV LP*

-14-

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served electronically through the Clerk's Office ECF notice facilities upon the parties eligible to receive notice on this 8th day of September, 2016.

      /s/ Jason S. Sharp
  Jason S. Sharp

29332790.v3