UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re | § § § | Chapter 11 |
| TRISTREAM EAST TEXAS, LLC, | § § | Case No. 16-31521 (DRJ) |
| Debtor. | § § § | (Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, *et al.*, | § § § § | |
| Plaintiffs. | § § | |
| | § § | Adversary Proc. No. 16-_____ |
| v. | § § | |
| TRISTREAM EAST TEXAS, LLC, EAGLE ROCK ACQUISITION PARTNERSHIP L.P., TARGA SOUTHTEX MIDSTREAM COMPANY L.P., | § § § § § § | |
| Defendants. | § § | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

**To the Honorable David R. Jones, Chief United States Bankruptcy Judge:**

The Official Committee of Unsecured Creditors ("Committee") of Tristream East Texas, LLC (the "Debtor"), by and through its undersigned counsel, respectfully submits the following complaint for declaratory judgments (the "Complaint") that (i) the Covenants (defined below) in certain gas gathering, compression and transmission agreements with Eagle Rock Acquisition Partnership L.P. ("Eagle Rock") and Targa Southtex Midstream Company L.P. ("Targa" and, together with Eagle Rock and the Debtor, the "Defendants") run with the land and are real property interests under Texas law that cannot be rejected in bankruptcy and (ii) because the Covenants cannot be rejected and continue to burden Eagle Rock and Targa's land, the damages

arising out of the Debtor's rejection of these agreements cannot be determined until after the rejected agreements are replaced (as they *must* be) by new gas gathering agreements.

## Introduction

1.  The Defendant, the Debtor in the above-captioned chapter 11 case (no. 16-31521, the "Chapter 11 Case") is a midstream operating company that provides gas gathering and processing services to producers (including Defendants Eagle Rock and Targa) from facilities in East Texas. The Debtor processes, treats and sells natural gas, natural gas liquids, condensate and sulfur, with special technical expertise in handling gas streams with impurities like carbon dioxide, nitrogen and hydrogen sulfide.[1]

2.  In the course of its chapter 11 proceeding, the Debtor sought authority to reject certain of its gas gathering agreements, notwithstanding that, under these agreements, the producers conveyed to the Debtor real property interests—dedication of gas in the ground—conveyances that are not executory contracts and thus not subject to rejection in bankruptcy.

3.  As a result of the purported rejection, the producers have filed massive rejection damages claims, asserting damages for the projected value through the remaining contract term.

4.  In accordance with this Court's Rejection Order (defined below), which authorized the Debtor to reject its gas gathering agreements but also preserved the parties' rights to challenge whether the agreements' covenants conveyed real property interests that could not be rejected, the Committee files this Complaint seeking declarations that (i) the Eagle Rock and Targa Covenants (defined below) are covenants that run with the land—*i.e.*, under Texas state law, these Covenants convey real property interests that cannot be rejected under section 365(a)

---

[1] *See Declaration of Gene Waguespack, Senior Vice President and Chief Financial Officer of Tristream Energy, LLC, in Support of Chapter 11 Petition and First Day Pleadings*, dated April 4, 2016 [Dkt. No. 22] ¶¶ 4-5.[1]

of the Bankruptcy Code—and (ii) that the amount of damages arising out of the rejection of the Agreements cannot be determined without accounting for the midstream counterparties to mitigate damages by entering into replacement agreements.

## Jurisdiction and Venue

5. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6. Venue of the Debtor's Chapter 11 Case and this adversary proceeding in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7. This adversary proceeding is commenced pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), which allows for an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property," and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"). Declaratory relief is appropriate pursuant to Bankruptcy Rule 7001 and 28 U.S.C. § 2201. As set forth below, an actual legal controversy exists between the Committee and the Defendants.

## Committee Standing

8. The Court granted the Committee standing to file this Complaint on the record at the hearing held in the Chapter 11 Case on August 8, 2016. The Debtor is not the proper party to protect the interests of the estate and unsecured creditors in this matter. In seeking to reject the contracts, the Debtor claimed that the contracts and their alleged rejection would benefit the Debtor. However, while burdening the debtor with $30 Million in unwarranted unsecured claims may help the Debtor and DIP Lender, the harm to the unsecured creditors and the estate is

significant. Accordingly, the Committee objected to the rejection and was granted standing by this Court to file the present suit.

### Parties

9. The Debtor in the Chapter 11 Case is Tristream East Texas, LLC,[2] a Delaware limited liability company, whose corporate office and principal place of business is located at 10370 Richmond Avenue, Suite 400, Houston, Texas 77042. Pursuant to Bankruptcy Rule 7004, the Debtor may be served by mailing the summons and complaint to that address by first class mail postage prepaid, with a copy to its counsel of record.

10. Defendant Eagle Rock Acquisition Partnership L.P. (a/k/a Vanguard or Vanguard Natural Resources), is a Delaware limited partnership, with a principal place of business located at 5847 San Felipe, Suite 3000, Houston, Texas 77042. Pursuant to Bankruptcy Rule 7004, Eagle Rock may be served by mailing the summons and complaint to that address by first class mail postage prepaid.

11. Targa Southtex Midstream Company L.P. is a limited partnership, with a principal place of business located at 107 W 7th St. Suite 2300, Tulsa, OK 74119. Pursuant to Bankruptcy Rule 7004, Targa may be served by mailing the summons and complaint to that address by first class mail postage prepaid.

12. The Committee was appointed on April 13, 2016 pursuant to Section 1102 of the Bankruptcy Code. Pursuant to Section 1103 of the Bankruptcy Code, the Committee investigated, and continues to investigate, the acts, conduct, assets, liabilities, and financial condition of the Debtor.

---

[2] A wholly-owned subsidiary of Tristream Energy, LLC.

4

**General Allegations**

13. The Debtor is a midstream operating company that provides gas gathering and processing services to producers (including Eagle Rock and Targa) from facilities in East Texas. Through the course of its business, the Debtor is party to (among others) certain gas gathering and related agreements with Eagle Rock and Targa, as described below.

*The Eagle Rock Agreements*

14. The Debtor (through its predecessors), as gatherer/processor, and Eagle Rock (in certain cases, through its predecessors), as producer, are party to, among others, nine gas processing and other commercial agreements executed between 1969 and 2010 (collectively, the "Eagle Rock Agreements"), listed below:

| EAGLE ROCK AGREEMENTS | | |
|---|---|---|
| **Contract Date** | **Contract Title** | **Counterparty** |
| Dec. 1, 1969 | Canton Field Hydrocarbon Sale and Purchase Agreement | Vanguard Natural Resources (formerly Pan American Petroleum Corp.) |
| June 13, 1979 | Processing Agreement | Vanguard Natural Resources (formerly Amoco Production Co. and Smackover Shell Ltd.) |
| July 25, 1983 | Gas Processing and Treating Agreement | Vanguard Natural Resources (formerly Prairie Producing Co. and Cities Service Oil and Gas Corp.) |
| Dec. 13, 1989 | Gas Processing Agreement | Vanguard Natural Resources (formerly Smackover Shell LP and Oxy NGL Inc. and Prairie Alba Co.) |
| Dec. 28, 1990 | Gas Processing and Treating Agreement | Vanguard Natural Resources (formerly Oxy USA, Inc. and Prairie Alba Co.) |
| June 16, 1995 | Gas Processing and Treatment Agreement | Vanguard Natural Resources (formerly Trident NGL, Inc. and Redman-Smackover JV) |
| Sept. 15, 1998 | Gas Purchase Contract | Vanguard Natural Resources (formerly Vintage Petroleum, Inc. and Dynegy Midstream Services, LP) |
| Nov. 1, 2001 | Gas Purchase Contract | Vanguard Natural Resources (formerly Dallas Production Inc. and Sulphur River Gathering LP) |
| Oct. 9, 2010 | Gas Gathering Agreement | Vanguard Natural Resources (formerly Eagle Rock) |

15. Each of the Eagle Rock Agreements contain language that dedicates all of the hydrocarbons owned and controlled by Eagle Rock covered in the relevant Eagle Rock Agreement to the Debtor for gathering and/or processing (the "Eagle Rock Covenants"). For example, the Canton Field Hydrocarbon Sale and Purchase Agreement between Clinton Oil Company (as producer) and Pan American Petroleum Corporation (as processor), dated December 1, 1969 provides that:

> This contract shall extend to, and be binding upon the parties hereto, their respective heirs, successors and assigns, and the terms hereof shall constitute covenants attached to and running with the leases and land covered hereby.

*See* Art. XV at 20.

16. Other Eagle Rock Agreements describe the producer as "dedicate[ing] to the performance agreement the share of all Full Well Stream which it owns and is produced from" a certain field. *See, e.g.*, *Gas Processing Agreement* by and between Smackover Shell Limited Partnership (as producer) and OXY NGL Inc. and Prairie Alba Company (as processor), dated December 13, 1989.

17. A list of the corresponding dedication provisions in the Eagle Rock Agreements (as well as the Targa Agreements) is attached hereto as **Exhibit A**.

18. In exchange for the property interest conveyed by the Eagle Rock Covenants, the Debtor agreed to "construct, install, operate and maintain" the necessary pipeline and related equipment. Although the exact language varies (with some agreements requiring the Debtor to, for example, "operate and maintain" or "use diligent efforts to cause to be completed"), the substance of these provisions is the same—the Debtor constructs and operates the gathering system for the purpose of extracting gas from Eagle Rock's property, in exchange for which Eagle Rock conveyed to the Debtor an real property interest in production at the wellhead.

19. Each of the Eagle Rock Agreement is binding on successors and assigns.

20. Each of the Eagle Rock Agreements permits termination of the agreement on 30-90 days' notice (with specific provisions varying by agreement).

*The Targa Agreements*

21. In addition to the Eagle Rock Agreements, the Debtor is party to two agreements with Targa (together, the "Targa Agreements," and, together with the Eagle Rock Agreements, the "Agreements"), which together provide for the Debtor's transportation of natural gas liquids via Targa's natural gas liquids pipeline system, which system is operated and maintained by the Debtor. The Targa Agreements are listed below:

| TARGA AGREEMENTS | | |
|---|---|---|
| **Contract Date** | **Contract Title** | **Counterparty** |
| June 15, 2007 | Natural Gas Liquids Transportation Agreement | Targa (formerly Texana Midstream Co LP) |
| June 15, 2007 | Natural Gas Liquids Pipeline Operating Agreement | Targa (formerly Texana Midstream Co LP) |

22. Like the Eagle Rock Agreements, the Targa Agreements (which were contemporaneously executed) dedicate all of the hydrocarbons owned and controlled by Targa to the Debtor for gathering and/or processing (the "Targa Covenants," and, together with the Eagle Rock Covenants, the "Covenants"):

> Seller commits and dedicates to sell to Buyer, and Buyer agrees to purchase and take, under this Agreement, 100% of the Y-Grade produced from the Originating Facilities (the "Seller Y-Grade") up to the volumes set forth below . . .

NGL Pipeline Operating Agreement, dated June 15, 2007 Art. III.C at 2.

23. The Targa Agreements are expressly binding on successors and assigns.

7

4850-8619-9354.v6

*The Bankruptcy Cases*

24. On March 30, 2016, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, with the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court"), commencing the Chapter 11 Case.

25. The Debtor continues to administer its assets as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Case.

*The Rejection Motion*

26. On June 7, 2016, the Debtor filed a motion to reject the Eagle Rock and Targa Agreements (among others). *See Debtor's Motion for Entry of an Oder Authorizing the Debtor to Reject Certain Executory Contracts* [Dkt. No. 118] (the "Rejection Motion").

27. The Committee filed its objection on June 28, 2016. *See Committee's Objection to Debtor's Motion for Entry of an Oder Authorizing the Debtor to Reject Certain Executory Contracts* [Dkt. No. 131] (the "Committee Objection"). Among other things, the Committee argued in its Objection that the Debtor could not reject the Eagle Rock and Targa Agreements because the Agreements contain covenants that run with the land, and under Texas law, are real property interests that cannot be rejected under section 365(a) of the Bankruptcy Code. *See* Committee Objection ¶¶ 4-10.

> The gas gathering pipelines of the debtor are mostly buried underground, and where unburied they are firmly and permanently anchored to the soil. The contracts to deliver, collect and transmit gas cannot be moved and are fixed to the location of the immovable pipelines. The pipelines were constructed by the Debtors only as part of an overall deal that necessarily included contracts for the gathering/collection, compression, transmission, and transportation of natural gas from a well through the pipelines. The use of these pipelines is not subject to rejection because the system has been dedicated to a use for the mineral rights *in rem* – not a personal contract right.

*See id.* ¶ 4.

28. Eagle Rock filed its own *Objection to Debtor's Motion for Entry of an Order Authorizing Debtor to Reject Certain Executory Contracts* on July 28, 2016 [Dkt. No. 138] (the "Eagle Rock Objection"). Like the Committee, Eagle Rock argued that the Eagle Rock Agreements could not be rejected because the Eagle Rock Covenants contained therein "are property interests that will continue to burden the Debtor's gathering and processing system." Eagle Rock Objection ¶ 3.

29. Ultimately, the Debtor, the Committee, certain midstream counterparties reached an agreement, culminating in their submission, and the Court's entry, of an agreed order granting in part the Debtor's Rejection Motion. *See Order Granting in Part Debtor's Motion for an Order Authorizing Debtor to Reject Certain Executory Contracts*, dated August 8, 2016 (as amended by the *Amended Order Granting in Part Debtor's Motion for an Order Authorizing Debtor to Reject Certain Executory Contracts*, entered on August 17, 2016 [Docket No. 154] (the "Rejection Order")).[3]

30. The Rejection Order was entered without prejudice to the Debtor's (or any other party's) rights to commence a proceeding in Bankruptcy Court or a state court of competent jurisdiction to seek a declaratory judgment that certain of the rejected agreements contain covenants running with the land that cannot be rejected. *See* Rejection Order ¶ 8.

31. The Rejection Order also provides that rejection of certain agreements—including the Targa Agreements—was "without prejudice to the Debtor's rights additionally to terminate

---

[3] On August 12, 2016, Targa filed a proof of claim based on rejection of the Targa Agreements, in the aggregate amount of $6,482,514.51. *See* Claim No. 58 (the "Targa Claim"). On October 10, 2016, Eagle Rock filed a proof of claim based on rejection of the Eagle Rock Agreements, in the aggregate amount of $27,121,148. *See* Claim No. 66. (the "Eagle Rock Claim").

9

any of the following contracts, in accordance with the terms and provisions of each contract, should termination result in a lower claim of said contracting parties against the estate." *See* Rejection Order ¶ 2.

### The Agreements Contain Covenants that Run with the Land

32. Consistent with the Rejection Order and the statements made on the record at the August 8, 2016 hearing on (among other matters) the Rejection Motion, the Committee files this Complaint seeking declarations that the Eagle Rock and Targa Covenants are covenants that run with the land—*i.e.*, under Texas state law, these Covenants convey real property interests that cannot be rejected under section 365(a) of the Bankruptcy Code—and that the amount of damages arising out of the rejection of the Agreements cannot be determined with reference to the projected value over the remaining life of the Agreements.

33. The determination of the nature of an interest in property is made with reference to state law. *See Butler v. United States*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law . . ."). It is undisputed that Texas state law applies to each of the Agreements. And, under Texas state law, the Covenants contained in the Agreements are covenants that run with the land—*i.e.*, conveyances of real property.

34. In Texas, a covenant runs with the land where (i) it touches and concerns the land; (ii) it relates to a thing in existence or specifically binds the parties and their assigns; (iii) it is intended by the original parties to run with the land; (iv) the successor to the burden had notice of the burden; and (v) there is privity of estate. *See Inwood N. Homeowners' Ass'n, Inc. v.*

*Harris*, 736 S.W.2d 632, 635 (Tex. 1987); *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 910-11 (Tex. 1982).[4]

*The Covenants Touch and Concern the Land*

35. A covenant touches and concerns the land if "it affect[s] the nature, quality or value of the thing demised, independently of collateral circumstances, or if it affect[s] the mode of enjoying it." *Westland*, 637 S.W.2d at 911. Stated another way, a covenant touches and concerns the land where, as a result of the covenant, the promisor's "legal interest as owner [is] rendered less valuable" or "the promisee's . . . legal interest as owner [is] rendered more valu[able]." *Id.* Although the Texas Supreme Court admitted in *Westland* that these definitions are "far from absolute," *id.*, there can be no question that the Eagle Rock and Targa Covenants touch and concern the land.

36. The Debtor constructed the pipelines as part of an overall deal with the Defendants Eagle Rock and Targa that necessarily included contracts for the gathering/collection, compression, transmission, and transportation of natural gas from a well through the pipelines. These pipelines are immovable—they are either buried underground, or in some places, firmly and permanently anchored to the soil.

37. The natural gas collected through the pipelines is trapped underground and produced through underground wells. Without agreements to use the buried pipelines, there is no basis for a gas gathering system. The systems have been dedicated to a use for the mineral rights *in rem*, and this use is inextricably intertwined with the Covenants that dedicate production

---

[4] The existence of *either* horizontal *or* vertical privity satisfies the fifth prong of this analysis. *See Westland Oil Dev. Corp.*, 637 S.W.2d at 910-911 (Tex. 1982) ("This means there must be a mutual **or** successive relationship to the same rights of property.") (emphasis added).

11

to the Debtor. Accordingly, the Covenants that dedicate Eagle Rock and Targa's production to the Debtor in exchange for the Debtor's gathering/processing and maintenance of the necessary infrastructure unquestionably impact the legal property interests of the parties.

*All Other Requirements for Covenants Running with the Land are Satisfied*

38. The other four elements for covenants running with the land under Texas law are clearly satisfied: Each agreement expressly binds successors and assigns (see Rejection Order ¶ 2); each agreement expresses an intent by the parties to be bound; the relevant parties had notice, and there is privity of the estate.[5]

### The Agreements' Executory Components are Severable from the Covenants

39. In addition to conveying real property pursuant to the Covenants, the Agreements also contain executory components with performance remaining due by both the Debtor and the applicable Defendant related to ongoing gas gathering and processing.

40. An executory contract is one under which both parties' obligations are "so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn. L. Rev. 439, 460 (1973); *Phoenix Exploration v. Yaquinto (In re Murexco Petroleum),* 15 F.3d 60, 63 n.8 (5th Cir. 1994) (citing Countryman standard); *Ebner v. Woodforest Partners, L.P. (In re EBCO Land Dev., Ltd.)*, 2008 Bankr. LEXIS 1207, *26-27 (Bankr. S.D. Tex. Apr. 17, 2008) ("The Fifth Circuit applies the Countryman definition of

---

[5] Privity of estate is "[a] mutual or successive relationship to the same right in property, as between grantor and grantee or landlord and tenant." Black's Law Dictionary (10th ed. 2014). "Horizontal privity" exists between "the original parties to the covenant." *In re Engergytec, Inc.*, 739 F.3d 215, 222 (5th Cir. 2013) (applying Texas law). "Vertical privity" exists between one of the original parties and an assignee or successor. *Id.* Although Texas law only requires either horizontal or vertical privity for a covenant to run with the land, both horizontal and vertical privity are present here.

executoriness"). Where certain portions of an agreement are fully performed and other components of the agreement remain executory, "a debtor may be able to reject this severed, executory portion of purported agreement. *In re Foothills Texas, Inc.*, 476 B.R. 143 (Bankr. D. Del. 2012) (interpreting Texas law).

41. Under Texas law, a contract is divisible, or severable, when one party's performance consists of more than one "distinct and separate item[] and the price paid by the other party is apportioned to each item." *Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co.*, 83 F.3d 735, 739 (5th Cir. Tex. 1996); *see also id.* (severable contract "includes two or more promises which can be acted on separately such that the failure to perform one promise does not necessarily put the promisor in breach of the entire agreement.") (citing *Black's Law Dictionary*).

42. Rejection of a "severable contract containing both an executed and an executory agreement" is not equivalent to the breach or rescission of the executed agreement, nor does it "require the undoing or reversal of already executed portions[.]" *Id.* at 742 (internal citations and quotations omitted). Rather, the executed components remain intact despite rejection of unperformed obligations of the contract. *Id.*

43. The Agreements contain executed components (*i.e.*, the conveyances of real property under the Covenants) in addition to certain executory components requiring future performance on both sides. These executory components are severable from the Covenants, and thus may be rejected by the Debtor without the "undoing or reversal of already executed portions." *Id.*

**Eagle Rock and Targa are not Entitled to Damages
Based on the Value of the Agreements**

44.     Because the Covenants cannot be rejected and continue to burden Eagle Rock and Targa's land, the damages arising out of the Debtor's rejection of the Agreements cannot be determined until after they are replaced by new gas gathering, compression and transmission agreements. Indeed, the Agreements *must* be replaced, because without new agreements, the Eagle Rock and Targa will have no means of transporting and bringing their product to the market. The value of these replacement agreements will offset (*i.e.*, mitigate) any rejection damages that Targa and Eagle Rock may assert.[6]

45.     Moreover, the Rejection Order contemplates that the Debtor may elect to terminate, rather than reject, the Targa Agreements, if the termination of the agreements by their terms would give rise to a lower amount of damages than rejection. *See* Rejection Order ¶ 2. Because damages for termination of the Targa Agreements would necessarily be reduced by Targa's obligation to mitigate damages, the Rejection Order prevents Targa from avoiding its duty to mitigate by asserting a rejection damages claim rather than one for (more limited) damages based on the Agreements' termination provisions.

46.     Accordingly, until such new agreements are in place, the amount of the Eagle Rock and Targa's rejection damage claims cannot be determined.

**Count I: Claim for Declaratory Judgment**
*Covenants Running with the Land*

47.     The Committee repeats and realleges the allegations set forth in Paragraphs 1 through 48, *supra*.

---

[6] The Eagle Rock Claim states that the aggregate $27,121,148 asserted damage claim is based on "the annual net cash flows for the remaining economic life of each well subject to the Eagle Rock Agreements." The calculations attached to the Targa Claim, in the aggregate amount of, suggest that Targa used similar assumptions in asserting its $6,482,514.51 claim.

48. As alleged herein, the Covenants run with the land under Texas state law and, as a result, are conveyances of real property that cannot be rejected under section 365(a) of the Bankruptcy Code.

49. By reason of the foregoing, an actual, justiciable controversy exists between the Committee and the Defendants as to whether the Agreements include conveyances of covenants running with the land.

### Count II: Claim for Declaratory Judgment
*Severability*

50. The Committee repeats and realleges the allegations set forth in Paragraphs 1 through 48, *supra*.

51. As alleged herein, the Agreement include conveyances of real property interests under Texas state law (*i.e.*, the Covenants) as well as executory components. While the Covenants are fully performed and not subject to rejection, the executory components of the Agreements may be rejected under section 365(a) of the Bankruptcy Code.

52. By reason of the foregoing, an actual, justiciable controversy exists between the Committee and the Defendants as to whether the Covenants are severable from any executory components of the Agreements that may be rejected under section 365(a) of the Bankruptcy Code.

### Count III: Claim for Declaratory Judgment
*Rejection Damages*

53. The Committee repeats and realleges the allegations set forth in Paragraphs 1 through 48, *supra*.

4850-8619-9354.v6

54. As alleged herein, each Agreement's value is attributable in its entirety to the Covenant contained therein, no value can be attributed to any component of the Agreement that executory and subject to rejection under section 365(a) of the Bankruptcy Code.

55. By reason of the foregoing, an actual, justiciable controversy exists between the Committee and the Defendants as to whether Eagle Rock and Targa are entitled to rejection damages based on the Debtor's rejection of the Agreements.

## Count IV: Claim for Declaratory Judgment
*Claim Objection - Apportionment and Limitation on Damages*

56. The Committee repeats and realleges the allegations set forth in Paragraphs 1 through 48, *supra*.

57. The Committee objects to the claims of Eagle Rock and Targa. If this Court determines that Eagle Rock and Targa are entitled to damages as a result of the rejection of the executory components of the Agreements, the Committee is entitled to an accounting that apportions each Agreement's value as between the Covenant therein and any executory components.

58. By reason of the foregoing, an actual, justiciable controversy exists between the Committee and the Defendants as to the amount of damages (if any) that Eagle Rock and Targa are entitled to assert based on rejection of the Agreements.

## Count V: Claim for Declaratory Judgment
*Termination Rights Preserved*

59. The Committee repeats and realleges the allegations set forth in Paragraphs 1 through 48, *supra*.

60. As alleged herein, the Debtor's termination rights under the Agreements are preserved notwithstanding rejection of the Agreements.

61. By reason of the foregoing, an actual, justiciable controversy exists between the Committee and the Defendants as to the amount of damages which Eagle Rock and Targa are entitled to assert based on rejection of the Agreements, and whether such damages are limited to an Agreements' value over the applicable termination period.

### Count VI: Claim for Declaratory Judgment
*Obligation to Mitigate Damages*

62. The Committee repeats and realleges the allegations set forth in Paragraphs 1 through 48, *supra*.

63. Because the Covenants will continue to burden the land notwithstanding any purported rejection of the Agreements by the Debtor, requiring Eagle Rock and Targa to enter into replacement agreements for the gathering of their resources, the value of such replacement agreements will mitigate any rejection damages that Eagle Rock and Targa may assert as arising out of the Agreements' rejection.

64. Until such time as these replacement agreements are in place, the amount of rejection damages which Eagle Rock and Targa may assert based on the Agreements' rejection cannot be determined.

65. By reason of the foregoing, an actual, justiciable controversy exists between the Committee and the Defendants as to whether the damages resulting from the Agreements' rejection must account for the mitigation value of replacement agreements.

### Prayer for Relief

66. WHEREFORE, the Committee respectfully requests that judgment be entered as follows:

4850-8619-9354.v6

a. On Count I, declaring that the Covenants run with the land and are therefore conveyances of real property that cannot be rejected under section 365(a) of the Bankruptcy Code;

b. On Count II, declaring that the Agreements' Covenants are severable from any executory components subject to rejection section 365(a) of the Bankruptcy Code;

c. On Count III, declaring that, as a matter of law, Eagle Rock and Targa are not entitled to damages as a result of the Debtor's rejection of the Agreements because the Covenants cannot be rejected and any executory portions of the Agreements have no value without the Covenants;

d. On Count IV, in the event that the Court finds that the executory components of the Agreements have value when severed from the Covenants, declaring that an apportionment of the value of each Agreement as between the Covenants and the executory components for purposes of calculating rejection damages under section 365(a) of the Bankruptcy Code;

e. On Count V, declaring that the amount of damages which Eagle Rock and Targa may assert (if any) as the result of the Agreements' rejection are limited to the amount of damages to which they would be entitled as a result of the Agreements' termination pursuant to their respective terms;

f. On Count VI, declaring that the amount of damages which Eagle Rock and Targa may assert (if any) as the result of the Agreements' rejection must be mitigated by the value of replacement agreements, and the amount of any such damages cannot be determined until replacement agreements are in place; and

    g.   For such other and further relief as the Court deems just and proper.

Dated:  October 18, 2016

    Respectfully submitted,

    */s/ Hugh M. Ray, III*

Hugh M. Ray, III
State Bar No. 24004246
Pillsbury Winthrop Shaw Pittman LLP
Two Houston Center, 909 Fannin, Ste. 2000
Houston, TX 77010-1028
Tel:  713.276.7661
hugh.ray@pillsburylaw.com

*Counsel to the Plaintiff, Official Committee of Unsecured Creditors*

19

4850-8619-9354.v6